IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crown Battery Manufacturing Co.,           Case No. 3:12CV2158

       Plaintiff

       v.                               **ORDER**

Club Car, Inc.,

       Defendant

      This litigation arises out of a multimillion dollar contract between plaintiff Crown Battery Manufacturing Co. (Crown) and defendant Club Car, Inc. (Club Car or CCI). Club Car, well known primarily for its golf carts, is a small-wheel electric vehicle manufacturer. In 2009, it contracted with Crown, a battery manufacturer, for golf cart batteries.

      Crown's first amended complaint (FAC) (Doc. 5) claims that Club Car owes it for unpaid invoices, breach and early termination of contract, and other causes of action. Club Car's answer and counter-claim denies Crown's allegations and seeks recovery for Crown's alleged breach of contract. The parties agree that the batteries were not fully compatible with the on-board charging (OBC) system in the carts. They also agree that New York law controls. They otherwise dispute each other's contentions.

      Jurisdiction is proper under 28 U.S.C. § 1332.

      Pending is Club Car's motion for judgment on the pleadings, in which Club Carr seeks

dismissal of all Crown's claims and entry of judgment in its favor on its counter-claims. (Doc. 19).

For the reasons that follow, I grant in part and deny in part Club Car's motion for judgment on the pleadings. I deny Club Car's motion for judgment as to its counter-claims.

**Background**

Crown, an Ohio corporation with its principal place of business in Fremont, Ohio, makes batteries for a variety of industrial uses including electric-powered vehicles. In September, 2009, it entered into a Strategic Supply Agreement (SSA) with Club Car, a Delaware corporation with its principal place of business in Evans, Georgia. Club Car agreed to purchase batteries from Crown for a three-year period, until August 31, 2012, for its golf carts and utility vehicles.

The SSA was a requirements contract – Crown supplied Club Car with its needs for various batteries as specified by Club Car. Beginning in January, 2010, Crown was manufacturing over 12,000 batteries each week. Crown delivered the batteries to its warehouse from which Club Car would take batteries as needed.

Club Car installed the batteries in golf carts that had the OBC systems. An OBC records vehicle energy usage and controls charging performance of a battery while maintaining, restoring, and recharging a battery during and between vehicle usage.

Crown and Club Car entered into several relevant warranty and design obligations under the SSA. The pertinent provisions are:

¶ 2 - Products

A. <u>Products Defined.</u> "Products" mean the Batteries and all related materials (including aftermarket parts or accessories) purchased hereunder from CROWN. . . .[1]

---

[1] Exhibit A to the SSA contains, *inter alia*, a listing by model number, etc., of the different batteries which Crown would produce under the contract.

¶ 7 – Warranty: Product Recall

A. <u>Generally</u>. CROWN warrants OEM batteries for the earlier of: forty eight (48) months or the consumption of twenty thousand (20,000) energy units (or, such different duration specifically listed on a per Product basis in <u>Exhibit A,</u>) from the date of receipt of the Product at Buyer's facility that the Products will be free from all defects in title, design, material and workmanship. CROWN further warrants that the Products will be in strict accordance with the mechanical and performance specifications and all other requirements set forth in the drawings for those Products and in any specification referenced in those drawings (or in any other disclosed materials, including "Design to Application" or "Design to Specification" documentation ), whether provided by CCI or CROWN, including those listed in <u>Exhibit A</u> (collectively, the "Specifications"). . . .

B. <u>Design and Integration Responsibility CROWN</u> [*sic*] acknowledges design and integration responsibility for the Products. . . . CROWN shall bear liability for all Vehicle failures to the extent that they result directly from a defect or deficiency in a Product's design, including(without limitation) a Product's integration into a Vehicle. This responsibility shall not be diminished or limited in any manner by other Batteries' or systems' interaction with the Product, even if such Batteries or systems were not supplied by CROWN. CROWN represents and warrants that it is familiar with all interrelated systems and Batteries within the Vehicles that could affect the performance, reliability and functionality of the Products. . . .

(Doc. 5-1, at 2, 6).

In Exhibit A to the SSA, the pertinent provisions are:

II.   Warranty

Batteries furnished by CROWN . . . are warranted to CCI during the Warranty Period (as defined below) to be free from Defects, subject to the conditions, restrictions and limitations set forth in this Exhibit A. "Defect" means any failure to (1) conform to mutually agreed upon specifications, . . . (3) be satisfactory for use in the CCI's golf and utility vehicles; or, (4) be free from defects [*sic*] material, design or workmanship, excepting normal wear and tear, . . .

III.  Warranty Period

3.1  The warranty period for the Batteries ("Warranty Period") is as set forth on the Warranty Table below, . . . The relevant Warranty Period for all Batteries for Vehicles is limited by usage, recorded as amp hours or energy units by the vehicle's On Board Computer (OBC), and time, in terms of years, whichever occurs first (also outlined in Warranty Table below).

3

    3.2    The Warranty Period commences on the date of vehicle registration by CCI Customer, if available, or if not available the code date on the Batteries. . . .

[Table listing battery types and duration (which is up to forty-eight months for each type)]

    IV.    Warranty Limitations

    This Battery warranty will not apply to the following:

    4.1    Batteries which fail as a direct result of

        a)    . . . charger errors including overcharging, undercharging, or incomplete charging for any reason including but not limited to operator error, lack of proper infrastructure, . . . not accounting for parasitic loads. . . .

(Doc. 5-1, at 12-13).

In early 2011, Club Car told Crown that the batteries in its golf carts were failing because they were not holding charges. In May, 2011, Club Car tendered hundreds of customer-submitted warranty claims for defective batteries. Crown refused to honor the warranty stating that the OBCs were defective, not its batteries. Crown alleged that Club Car provided Crown with incorrect specifications which resulted in the OBC failing properly to charge the batteries. Club Car maintained that the batteries failed because they did not meet the specifications provided by Club Car.

As of October, 2011, Club Car was purchasing 5,000 to 7,000 batteries weekly. In November, 2011, Club Car told Crown that it would no longer use Crown's batteries for its "Precedent" vehicle line. Club Car's purchases dropped from an average of 800 batteries per week by January, 2012, to zero batteries by March, 2012. Crown alleges a loss of sales of approximately seven to ten million dollars as a result.

On April 3, 2012, Club Car withdrew all remaining batteries, approximately 2,400, from the distribution center Crown maintained. Club Car has not yet paid for those batteries. As of April 4,

2012, Crown alleges that Club Car owes $2.3 million for batteries it took.

Crown asserts eight claims in its FAC.  Counts One and Two are for breaches of contract for Club Car's unpaid account and its early termination of the Precedent vehicle batteries. Count Three is for misrepresentation of the charging capacity of the OBCs.

Count Four is for business defamation.  Crown states that between February, 2011, and April, 2012, various Club Car employees and representatives told purchasers of Club Car's products that "[Crown Battery's] product was junk," battery performance issues were "caused by a Crown Battery quality issue," and the "Crown product was failing due to poor quality."

Finally, Counts Five, Six, Seven, and Eight are for account stated, promissory estoppel, unjust enrichment, and conversion, respectively, which are plead in the alternative.

Club Car filed an answer denying all eight counts and asserted a two-count counter-claim. Count One is for breach of contract for non-performance of Crown's batteries. Count Two is for breach of express warranty for failure of Crown's batteries to conform to Club Car's specifications.

**Standard of Review**

Defendant moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed – but early enough not to delay trial –  a party may move for judgment on the pleadings." I review Rule 12(c) motions under the same standard as Rule 12(b)(6) motions. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group*, 463 F.3d 478, 487 (6th Cir. 2006). The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after defendant filed an answer, as was done in this case.

If plaintiff's complaint does not plead "enough facts to state a claim to relief that is plausible on its face," then I must grant defendant's motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When deciding 12(c) and 12(b)(6) motions, I limit my inquiry to the content of plaintiff's complaint, with the exception of matters of public record, orders, items appearing in the record and attached exhibits. *See Yanacos v. Lake County, Ohio*, 953 F. Supp. 187, 191 (N.D. Ohio 1996). I must accept all well-pled material allegations stated in the complaint as true and view the complaint in the light most favorable to the plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283, 299 (1986). I am, however, "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 286.

## Discussion

### A. Breach of Contract

Under New York law, I must interpret a contract by "giv[ing] effect to the intent of the parties as revealed by the language of their agreement." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (citing *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). If the terms of a written contract are clear and unambiguous, I must find the intent of the parties "within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations." *Howard v. Howard*, 292 A.D.2d 345, 345 (N.Y. App. Div. 2002).

When analyzing the contract's text, I "need not turn a blind eye to context." *Coudert*, *supra*, 487 B.R. at 389. Rather, I should "accord [contractual] language its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties sought to accomplish.'" *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) (citation omitted). Ultimately,

I must enforce a "written agreement that is clear, complete and subject to only one reasonable interpretation . . . according to the plain meaning of the language chosen by the contracting parties." *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 2012 WL 3890128, *5 (S.D.N.Y. 2012) (citation omitted).

Club Car argues that ¶ 7(B) of the SSA bars Crown's breach of contract claims. Under that paragraph, Crown stated that it "acknowledges design and integration responsibility for the Products," was "familiar with all interrelated systems and Batteries within the Vehicles," and agreed to "bear liability for all Vehicle failures to the extent that they result directly from a defect or deficiency in a Product's design, including (without limitation) a Product's integration into a vehicle." (Doc. 5-1, at 6). Thus, Club Car contends, even if the OBCs caused the batteries' failures, Crown had taken on the obligation of ensuring that they would work with Club Car's OBC system. That being so, according to Club Car, it is entitled to dismissal of Crown's breach of contract claims, and judgment in its favor as to its counter-claims.

Crown asserts that it fully complied with its obligations under the SSA because it manufactured batteries according to the mechanical and performance specifications that Club Car provided, as stipulated in ¶ 7(A) of the SSA. Responding to Club Car's reliance on ¶ 7(B), Crown points to Exhibit A of the SSA. That provision states Crown's battery warranty will not apply if batteries fail as a result of defective charging or charging errors including "overcharging, undercharging or incomplete charging for any reason." (Doc. 5-1, at 12). Crown contends that, to give full meaning and effective to all the terms in the parties' overall agreement, I must read Exhibit A in tandem with the SSA. When I do so, Crown asserts, I must conclude that it is not liable for the OBCs' (and thus, the batteries') malfunctioning because Club Car provided incorrect specifications.

7

In a word, Crown contends it played the cards Club Car dealt.

Because I must accept well-plead allegations as fact, I find plaintiff's arguments persuasive. In its FAC, plaintiff asserts, in essence:

- Club Car provided it with specifications for compliance with the OBC system. (Doc. 5, ¶ 14);

- Crown's battery design relied on and followed those specifications. (Doc. 5, ¶ 14);

- Club Car knew or should have known that "the specifications for the Original Club Car OBC did not meet the necessary requirements to sufficiently charge the Batteries." (Doc. 5, ¶ 15).

Taking these allegations as true, Crown designed the batteries properly and did not breach the contract because Club Car's specifications were either inaccurate or incomplete.

Club Car, responding to this contention, acknowledges "For purposes of this Motion, Club Car accepts the allegation that the Batteries failed because of the OBCs." (Doc. 24, at 3). Thus, it contends that it is entitled to judgment on the pleadings because the only question is a matter of law: namely, whether Crown is liable for the batteries' failures, *regardless of the cause*, under the SSA. Interpreting the contract below, I find that if Club Car provided incomplete or inadequate specifications for successful integration of the batteries with the OBC system, it, not Crown, is at fault for the battery failures. If so, Club Car is not entitled to judgment on the pleadings.

Club Car argues that the SSA's merger clause, which states that the SSA "supersedes all previous communications, representations, or agreements, either oral or written," (Doc. 5-1, at 10), prevents Crown from relying on alleged misrepresentations of material specifications. Crown, however, does not argue that the alleged misrepresentations are parole evidence which should be admitted. Rather, Crown states that *pursuant* to their agreement, Club Car provided the wrong – and

8

misleading – specifications about the OBC system, and, moreover, Crown relied on those specification when designing the batteries.

In making this response, Crown points to Art. II of Exhibit A of the SSA, which states Crown warrants the batteries "conform to mutually agreed upon specifications." (Doc. 5-1, at 12). Moreover, Club Car's brief states that it did provide specifications for the batteries and OBCs. (Doc. 19, at 12). Thus, it appears that Crown was entitled to rely on Club Car's specifications and should not be held liable for any of Club Car's inaccuracies.

While the contract unambiguously states that Crown is familiar with all interrelated systems and batteries within the vehicles and that it bears liability for vehicle failures resulting from a defect in the battery's design, I must read these provisions side-by-side with the warranty obligations as to design responsibilities in ¶ 7(A) and Exhibit A of the SSA.

Club Car opposes this reading of the contract. It claims the warranty limitations in Exhibit A do not apply to Crown's obligations under ¶ 7 of the SSA. Club Car bases its contention on Article IV of the Exhibit which states "*This* battery warranty..." (Doc. 5-1, at 12) (emphasis added), meaning that the limitations recited only apply to batteries listed in Exhibit A. I am not persuaded. Paragraph 7(A) specifically references Exhibit A twice. Exhibit A simply details more thoroughly products referenced in the SSA. The warranty obligations and limitations therein are all part of the same, and when read in conjunction, unitary agreement. Thus, I conclude that Exhibit A's warranties apply to ¶ 7 of the SSA.

In Art. II of Exhibit A, Crown warrants that the batteries will "be free from defects [in] design." (Doc. 5-1, at 12). If, however, Crown can prove that Club Car gave Crown misinformation and Crown relied on what it got from Club Car, Crown cannot be held to have breached the contract.

9

Finally, Art. IV of Exhibit A states that the warranty does not apply to batteries which fail as a direct result of "charging errors," however caused. According to Crown, the crux of this case is the OBCs' charging errors. Taking this allegation as true and in light of my interpretation of the SSA and Exhibit A, I must overrule Club Car's motion for judgment on the pleadings for plaintiff's breach of contract claims (Counts One and Two[2]). Likewise, I also dismiss defendant's motion for judgment on the pleadings in favor of its counter-claims for breaches of contract and express warranty.[3]

### B. Misrepresentation

In Count Three of its FAC, Crown alleges misrepresentation – specifically, Club Car either knew or should have known that it provided incorrect information regarding the OBCs which led to integration failure between Crown's batteries and the OBCs.

Under New York law, the elements of negligent misrepresentation are:

1) defendant had a duty, as a result of a special relationship, to give correct information; 2) defendant made a false representation that he or she should have known was incorrect; 3) information supplied in the representation was known by defendant to be desired by the plaintiff for a serious purpose; 4) plaintiff intended to rely and act upon it; and 5) plaintiff reasonably relied on it to his or her detriment.

---

[2] Count Two alleges that Club Car's termination of the contract constituted a breach by Club Car. If Crown performed its part of the bargain, as I conclude the complaint sufficiently alleges, then Club Car's termination of a contract which the other party was performing was a breach on its part. Thus, my dismissal of defendant's motion to Count One necessitates a dismissal to Count Two.

[3] I do not mean by my present interpretation of the contract to preclude Club Car from arguing, if it desires and, on presentation of such argument, it appears permissible for it do so, that parole evidence may be needed and available to harmonize the contract's terms. Nor am I ruling that any putative inconsistency between the SSA and Exhibit A creates an ambiguity needing explication *via* parole evidence. I merely note for now my conclusion that, reading these documents in the light most favorable to Crown, I am persuaded that its reading is more on the mark than Club Car's.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

Club Car argues that Crown's claim fails under the economic loss doctrine. That doctrine states that "a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence." *Traveler Casualty and Surety Co. V. Dormitory Authority–State of N.Y.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010). It is a "well established principle that a . . . breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Shred-It USA v. Mobile Data Shred*, 222 F. Supp. 2d 376, 378 (S.D.N.Y. 2002) (citing *Clark-Fitzpatrick v. Long Island Rail Road Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)).

Club Car argues that Crown's alleged losses due to non-performance of its batteries and Club Car's warranty claims are purely economic and relate directly to the parties' obligations under the SSA. Thus, the economic loss doctrine precludes the misrepresentation claim.

Crown contends that New York law allows plaintiffs to bring tort and breach of contract claims in the same action when defendant makes misrepresentations which induced plaintiff to enter the contract. Responding to this contention, Club Car notes that Crown is changing its misrepresentation claim to one of fraudulent inducement. This too, Club Car states, fails for a variety of reasons – most notably, because Crown fails to allege an intent on Club Car's part to deceive Crown.

I agree with Club Car. Crown's allegations that Club Car provided incorrect specifications for proper integration between its batteries and the OBCs is the heart of the breach of contract claims. Thus, Crown's misrepresentation claim relates directly to the obligations under the SSA. Crown seeks the same damages, which are purely economic, in its breach of contract claims.

Crown's attempt to establish an independent legal duty by refashioning its misrepresentation claim to one of fraudulent inducement also fails. Crown has not sufficiently pled the elements of fraudulent inducement in its complaint. In any event, the conclusory allegation, Club Car's "representations were made with the intention of misleading Crown Battery" (Doc. 5, ¶ 52), fails utterly to meet the heightened pleading standard of Fed. R. Civ. Pro. 9(b).

For the foregoing reasons, I dismiss Count Three of Crown's FAC.[4]

### C. Business Defamation

In Count Four of its FAC, plaintiff alleges that Club Car's representatives defamed Crown's business. Plaintiff details six instances where Club Car's representatives made allegedly defamatory remarks to various dealers and suppliers of Club Car's golf carts between February, 2011, and April, 2012:

- Battery performance issues were "caused by a Crown Battery quality issue."

- "Crown product was failing due to poor quality";

- "Crown Batteries are the problem" in reference to battery performance issues;

- Crown Battery's products were "poorly performing," had "serious quality issues," and a Crown dealer should "be careful about representing Crown Battery's products";

- Club Car "was experiencing quality issues with Crown Battery's products"; and

---

[4] Crown's pleading of its misrepresentation claim also fails to meet the pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g.*, *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, *4 (S.D.N.Y. 2003) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard;" to meet the Rule 9(b) standard, a plaintiff must state who made the misrepresentations, and "where and when were they made, and why they are considered fraudulent.").

- "Club Car threw out Crown Battery as a supplier because [Crown Battery's] product was junk."

(Doc. 5, at 10-11).

Defendant argues that, because each of the statements relates to Crown's batteries, not Crown itself, plaintiff's defamation claim is really one of product disparagement. Furthermore, even if the claim is one of defamation, Club Car contends there is no proof of falsity in the statements because Crown's batteries actually did not function as they should have.[5]

Under New York Law, the tort of product disparagement is separate and distinct from the tort of defamation. *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981) ("[A]lthough defamation and disparagement in the commercial context are allied in that the gravamen of both are falsehoods published to third parties, there is a distinction."); *see also Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) ("Under New York law, slander and disparagement of goods constitute distinct causes of action." (*citing, inter alia, Ruder & Finn Inc.*, *supra*, 422 N.E.2d at 522)).

Both claims share the requirement that a speaker publish a falsity to a third party, but they differ with respect to the subject matter of the speaker's statement. *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006). In a product disparagement claim, the statement denigrates the quality of the business' goods or services. *Fashion Boutique*, *supra*, 314

---

[5] Crown's attribution of fault for the failure to Club Car does not undercut the truthfulness of Club Car's alleged statements to its customers (and/or others): the batteries failed to function due to poor quality – *i.e.,* incompatibility with the OBCs. That was, in fact, the situation, regardless of which party should prevail on their conflicting views of who was responsible under the contract. Thus, Crown does not adequately plead the element of falsity. I consider, nonetheless, and agree with Club Car's assessment of the underlying nature of Crown's disparagement claim.

13

F.3d at 59. For defamation, the statement "impugns the basic integrity or creditworthiness of a business." *Ruder & Finn, Inc.*, *supra*, 422 N.E.2d at 522. An effect of this distinction between the two claims is that product disparagement requires a showing of special damages while defamation does not. *See Fashion Boutique*, *supra*, 314 F.3d at 59 (plaintiff must prove "that the statements caused special damages" for product disparagement claims but"general damages to the reputation of the business are presumed" for claims of slander per se).

At issue is whether any of the six statements go to the integrity of Crown's business. I agree with Club Car and find, as a matter of law, that the statements all relate to the quality of Crown's products, not Crown's integrity itself.

Statements about a business's integrity typically deal with the methods of the business. *See, e.g.*, *Anglo-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 272, 274 (S.D.N.Y. 1989) (characterizing statements that impute fraud, dishonesty, and unfitness to a company as defamatory); *Henneberry*, *supra*, 415 F. Supp. 2d at 472 (holding that statements alleging plaintiff's lack of skill and business acumen resulting in its poor financial condition "clearly impugn plaintiff's integrity and business methods") (internal edits omitted).

Here, the statements either reference the batteries' quality or their performance, which is an issue of quality. Even the harshest statement, which calls Crown's batteries "junk," is about the product itself and not an attack on Crown's business operations. Club Car's representatives did not say anything about Crown's fitness to operate a business nor did they impute any fraud or dishonesty to the company.

Crown compares its claim to *Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003), in which plaintiffs, art collectors, sued defendants for making disparaging statements about the authenticity of certain

14

paintings plaintiffs possessed. Crown states that the Second Circuit reversed and remanded the trial court's denial of the business defamation claim, ordering the court to consider whether the defendants' false statements about the authenticity of the plaintiffs' paintings caused harm to plaintiffs' business.

As Club Car points out, however, Crown somewhat misstates the appellate court's decision. The appellate court specifically distinguished statements about the authenticity of the paintings from statements about plaintiff's *knowledge* about their authenticity. *Id.* The court states "[w]hile most of the state law claims were based on statements about the authenticity of the Paintings, some were not." *Id.* It ordered the trial court on remand to consider statements specific to plaintiff's knowledge because these – and not statements about the authenticity alone – went to the integrity of plaintiffs' business. *Id*.

Because this is a product disparagement claim dressed up as one of business defamation, I find that plaintiff's pleading of this claim is insufficient under New York law's requirements for product disparagement[6] and dismiss Count Four.

### D. Account Stated

Under New York law, an account stated is "an express or implied promise by a debtor to pay a stated sum of money which the parties have agreed is the amount due." *LLT Int'l v. MCI Telecommc'ns Corp.*, 69 F. Supp. 2d 510, 520 (S.D.N.Y.1999). A claim for account stated is

---

[6] For example, Crown failed to allege that the defamatory statements caused special damages. Mere allegations, moreover, are often not enough. For instance, "[w]here loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fashion Boutique*, *supra*, 314 F.3d at 59 (quoting *Drug Research Corp. v. Curtis Publ'g Co.*, 66 N.E.2d 319, 322 (N.Y. 1960)).

independent of an underlying agreement. *See Leepson v. Allan Riley Co.*, 2006 WL 2135806, *4 (S.D.N.Y. 2006).

To establish a claim for an account stated, plaintiff must prove: 1) it presented an account to the defendant; 2) the defendant accepted the account as correct; and 3) the debtor promised to pay the amount stated. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y.2009).

Crown alleges that between November, 2011, and April, 2012, Club Car failed to pay for the batteries it withdrew from the warehouse. Crown provides invoices which total approximately $2.3 million in unpaid invoices. Crown pleads that the amount due is an account stated.

Club Car argues that the lack of an independent agreement between the parties regarding the alleged debt of $2.3 million bars Crown's account stated claim. Rather, Club Car contends, the SSA governs the dispute. Thus, it argues, whether it owes anything depends on the outcome of the parties' conflicting breach of contract claims.

Crown argues that Club Car terminated the SSA in November, 2011, when it issued notice that it would no longer source batteries for its Precedent vehicle line from Crown. Crown states that because of this termination, the SSA no longer governed Club Car's withdrawal of batteries from the warehouse after that point.

I conclude Crown can move forward with its account stated claim at this stage of the litigation.

Club Car cites *Cobblestone Advisory Group, LLC v. Lembi Group Partners, LLC*, 2011 WL 5881187, *15-16 (S.D.N.Y. 2011), and *Xuchang Rihetai Human Hair Goods Co. V. Hanyu Int'l USA Inc.*, 2001 WL 883646, *5 (S.D.N.Y. 2001), for the proposition that Crown cannot maintain

16

an action for an account stated when it is merely seeking to enforce defendant's obligations under their original transaction. Both decisions, however, came at the summary judgment stage when there was no dispute that valid contracts governed the parties' obligations to each other.

In contrast, I am deciding this issue on a motion to dismiss; I look, accordingly, at the facts alleged in a light most favorable to the plaintiff. *Papasan*, *supra*, 478 U.S. at 283, 299. Moreover, there is a dispute over the validity of the contract – Crown and Club Car disagree about when the SSA was terminated. Crown believes it ended in November, 2011, while Club Car argues it naturally expired in August, 2012. Because I take Crown's allegations as true, I find that Crown may have had an independent implied agreement with Club Car and the account stated claim may stand.[7]

### E. Promissory Estoppel, Unjust Enrichment, Conversion

Counts Six, Seven, and Eight of Crown's FAC are for promissory estoppel, unjust enrichment, and conversion, respectively. Crown pleads these quasi-contractual and conversion claims in the alternative to its breach of contract claims.

Citing *Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012), Club Car argues that quasi-contractual relief is unavailable under New York law if an express contract covers the subject matter. Similarly, it argues that a conversion claim is not proper if a plaintiff cannot allege a wrong that is independent from the breach of contract claim.

Under New York law, a plaintiff may plead causes of action "alternatively or hypothetically." N.Y. C.P.L.R. § 3014. *See, e.g.*, *ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 934 (N.Y. App. Div. 2012) (holding that "a party need not elect its remedies

---

[7] If, however, I later find that the SSA was in force until August 31, 2012, as Club Car argues, then I may dismiss the account stated claim at that point.

17

and may proceed on alternative theories if a disagreement exists concerning whether the contract covers the situation at issue").

As with the account stated claim, there is a dispute about the validity and scope of the SSA after November, 2011. Taking as true Crown's assertion that Club Car terminated the contract in November, 2011, Crown may properly plead its quasi-contractual and conversion claims. If the contract did not exist at this time and Club Car took batteries from Crown, plaintiff may have viable claims for promissory estoppel, unjust enrichment, and conversion. As the litigation proceeds, I may dismiss these alternative theories of recovery. At this point, however, I decline to do so.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Club Car's motion to dismiss (Doc. 19) be, and the same hereby granted with regard to Counts Three and Four of Crown Battery's complaint, and otherwise is overruled; and

2. Club Car's motion for judgment on pleadings as to its counter-claims be, and the same hereby is denied.

So ordered.

/s/ James G. Carr
Sr. United States District Judge