IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crown Battery Mfg. Co.,                                    Case No. 3:12CV2158

       Plaintiff
  v.                                                                          **ORDER**

Club Car, Inc.

       Defendant


This is protracted suit between plaintiff Crown Battery Manufacturing Company (Crown), a supplier of batteries, and its customer, Club Car, Inc., (Club Car) a manufacturer of golf carts. Crown originally sued, *inter alia*, to collect on an unpaid account. Club Car filed a counter-claim alleging, *inter alia*, that Crown's batteries failed to meet specifications in that they could not be recharged in accordance with Club Car's requirements, and that, as a result, Club Car faces $27 million in warranty claims – which it seeks to impose on Crown.

Crown was one of a series of battery suppliers to Club Car. According to Crown, batteries that its predecessors had supplied to Club Car failed in operation as did Crown's batteries. In prior iterations of its complaint, Crown has contended that Club Car gave it faulty specifications.

In its proposed Second Amended Complaint, Crown adds to this contention allegations that Club Car's "On Board Computer" (which Club Car refers to as the "On Board Charger") (OBC) never did or could function as Club Car intended. This was so, according to the complaint, even though Club Car worked to create a workable OBC for its golf carts.

The basic problem, Crown asserts, is that the OBC could not accurately read the amount of current the cart would draw while in operation. As a result, Crown batteries – and those from prior

suppliers – would not recharge fully. Undercharged carts would leave golfers stranded in mid-course and cause similar problems. Moreover, in time batteries would become dead and incapable of being recharged.

Pending is Crown's motion for leave to file its Second Amended Complaint, (Doc. 69, 70), which Club Car opposes.

Through its motion for leave to amend, Crown seeks to join with its current contract and quasi-contract claims new causes of action for 1) fraudulent inducement; 2) fraud; 3) misrepresentation (under Ohio common law); and 4) violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.02(10).

Club Car opposes the motion for leave to amend on several grounds: 1) the proposed Second Amended Complaint is futile because a) I have previously dismissed a substantially similar claim for misrepresentation, and b) New York, not Ohio law controls the parties' contract, so that Crown cannot assert causes of action under Ohio law; and 2) Crown has unduly delayed filing its instant motion and allowing the proposed amendment will greatly prejudice Club Car.[1]

Underlying the motion to amend and proposed amendment is substantial discovery that I allowed Crown to take relating to Club Car's experiences with other battery suppliers.

For the reasons that follow, I grant the motion for leave to amend.

**Discussion**

---

[1] I assume, without deciding, that Ohio law applies and thus Crown can assert a claim under the Ohio Deceptive Trade Practices Act. For now, I rule only that, if such cause of action under Ohio law is available to Crown, it has pled it adequately. However, should there be disagreement on that issue, the parties will have the opportunity to brief it.

As Club Car points out, I previously granted its motion to dismiss Crown's claim for misrepresentation in its First Amended Complaint. (Doc. 26); *Crown Battery Mfg. Co. v. Club Car*, 2013 WL 5670950 (N.D. Ohio). Contrary to Club Car's contentions, that decision does not control disposition of Crown's pending motion. This is so because I based that dismissal on Crown's failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Id.*, *7.

The proposed complaint cures those deficiencies with regard not just to Crown's misrepresentation claim, but its fraud- based and Ohio's Deceptive Trade Practices Act (ODTPA) claims as well. Despite Club Car's protests, the allegations underlying Crown's claims for fraudulent inducement, fraud, and misrepresentation are now far more detailed and substantial.

In sum, the facts, as plead in the Second Amended Complaint are that:

- Club Car's "on board computer" (which Crown has referred to in the past, and which Club Car continues to refer to as the "on board charging" system) has never functioned as Club Car has intended since its introduction;

- Crown knew that its OBC was incapable, and never became capable of properly charging the batteries in its golf carts;

- When the batteries obtained from earlier suppliers failed, Club Car blamed the other suppliers, thereby developing a pattern and practice whereby it sought to avoid the consequences of such failure;

- Club Car specifically told Crown that its OBC "was capable of measuring current;" that statement was false, and Club Car knew it was false when made(¶ 75);

- The specifications Club Car provided were false, inaccurate, and misleading (¶ 76);

- Club Car expressly and falsely told Crown that the "OBC includes a [H]all effect current sensor that monitors all battery current via the pack B-connection. The OBC integrates this current and maintains all the Ah discharges system could accurately read the outflow of current, and thus accurately depict the needed inflow of current to obtain full, or more than full charge" (¶ 81);

- The ability of the OBC to account accurately for all battery current was a material fact in Crown's decision to supply batteries to Club Car (¶ 82);

3

- Club Car knew the Hall-effect sensor did not measure battery current (¶ 84);

- Although Club Car had known for years its OBC could not provide an adequate charge, it told Crown the system "accounted for all current draws" (¶ 86);[2]

- Crown relied on the false statements about the functionality of Club Car's OBC, and was unaware of Club Car's prior problems with earlier OBC versions;

- But for Club Car's false representations, on which Crown reasonably relied, Crown would not have entered into its supply agreement with Club Car, thereby causing itself substantial financial injury.

(Doc. 71, ¶¶ 71-95).

The foregoing are, unlike those in Crown's misrepresentation claim in the First Amended Complaint, detailed factual assertions. These assertions satisfy the requirements of Fed. R. Civ. P. 9(b) for specificity as to fraud-based claims. *Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 803 (6th Cir. 2012);  *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998); *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).

The proposed complaint thus overcomes the deficiencies of the misrepresentation claim in the First Amended Complaint. It does so because, as Crown contends, discovery has provided the factual bulk necessary to state these re-pled causes of action adequately.

The contentions encompass the elements of a common law claim for fraudulent misrepresentation, which are: 1) a representation, or where there is a duty to disclose, concealment of a fact, 2) which is material to the transaction, 3) made falsely, with knowledge of its falsity, or with

---

[2] Club Car tries to discount the significance of this express statement, which accompanied specifications labeled as "draft."  As pled, that label *vis-a-vis* the specifications does not overcome the fact that Club Car made that affirmative, allegedly false statement with knowledge of its falsity. This is particularly so in the context of Crown's allegations about Club Car's concealment of its past problems with earlier, but (according to the proposed complaint) substantially similar versions of the OBC.

such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, 4) done with the intent of misleading another into relying on it, 5) justifiable reliance on the representation or concealment, and 6) such reliance proximately caused plaintiff's injury. *See, e.g., Cardi v. Gump*, 121 Ohio App.3d 16, 22 (1997); *Kimball v. Duy*, 2002-Ohio-7279, ¶ 23; *Bencivenni v. Dietz*, 2013-Ohio-4549, ¶ 43; *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 326, 643 N.Y.S.2d 33, 36 (1996).

The same is true with regard to Crown's ODTPA claim as well. Pursuant to ODCPA§ 4165.02(A)(10), of the Revised Code, a person engages in a deceptive trade practice when, 1) in the course of the person's business, he 2) disparages the goods, services, or business of another by false representation of fact.[3]

I also agree with Crown that neither New York's nor Ohio's economic loss doctrines bars Crown's ability to proceed on its fraud-based claims. Thus, in New York, a plaintiff can state a "valid fraud claim . . . premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter into the contract." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994).

Ohio law is to the same effect:

> The common-law duty not to deceive a party into entering the contract or agreement is, thus, independent and separate from a duty not to breach a contractual obligation. Under Ohio law, Plaintiff can maintain a fraud claim based on a theory of fraud in the inducement or promissory fraud alongside his breach of contract claim.

*King v. Hertz Corp.*, 2011 WL 1297266, *3 (N.D. Ohio).

---

[3] In Count Four, Crown only alleges that Club Car violated § 41605.02(A)(10) of the ODTPA by making knowingly false statements that disparaged Crown's business.

Here, in any event, Crown has two distinct and free-standing claims: first, and at the very least, Club Car has not paid for all the batteries it got from Crown. Whether the contract stands or falls due to the alleged fraud is immaterial *vis-a-vis* the claim for nonpayment, which Crown also asserts alternatively as one for unjust enrichment.

Crown now also alleges successfully, at least from a pleading standpoint, that it suffered other losses, apart from what Crown owes it on account, from being misled into making the agreement it otherwise would not have had.

I likewise agree with Crown that the agreement's merger clause does not bar its contention that the clause, like the agreement as a whole, is the product of fraudulent misconduct on Club Car's part. While merger clauses implicate the reasonableness of parties' reliance on the alleged misrepresentation, they do not preclude evidence of fraud. This is equally true under New York law, *Kwon v. Yun*, 606 F. Supp. 2d 344, 358 (S.D.N.Y. 2009), as it is under Ohio law. *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 612-613 (6th Cir. 2011) (*citing Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 756 F.2d 443, 447 n.2 (6th Cir. 1985), *accord Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000)).

This is a sensible doctrine: otherwise a party that successfully perpetrated a fraud that led to a contract with a merger clause would enjoy *de facto* immunity from the consequences of its untruthfulness. A merger clause would, in other words, be a cheap and effective way of insuring oneself from being held accountable for lying.

Finally, I disagree that Crown unduly delayed seeking leave to file its Second Amended Complaint. Before and after I expanded the scope of Crown's discovery, Club Car objected on the basis of extent and expense. Given the volume of material that came forth, Club Car cannot be

heard to complain that Crown somehow was dilatory in going through and evaluating that material it received, and, ultimately, finding some part of it useful in its reformulation of its previously inadequately pled misrepresentation claim.

I agree with Club Car that my allowing Crown to file and proceed on its Second Amended Complaint will have a prejudicial effect. But that's not the standard: the issue is whether the resultant prejudice – namely, the time and expense involved in defending a substantially expanded lawsuit, and the enhanced risk of liability – is justified under all the circumstances. *See Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (In determining prejudice, "the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction."). What matters is whether, under all the circumstances, putting Club Car to those consequences and that risk is unduly or unfairly prejudicial.

I conclude that it is not, especially on balance with the risk of unfairness to Crown if I were to deny its motion. While, as Club Car points out, it is counterintuitive that a well-regarded company would deliberately put inoperable items into the market, that observation is not enough to bar Crown from proceeding with the present version of the facts as it asserts them.

Finally, I find no merit in the contention that Crown has acted in bad faith in seeking leave to file its Second Amended Complaint.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Leave be, and the same hereby is granted to plaintiff Crown Battery Manufacturing Company to file its Second Amended Complaint per its motion for such leave (Doc. 69, 70); and

2. The parties shall meet and confer for the purpose of proposing such adjustments to the case schedule as they deem necessary and appropriate, and thereafter on or before March 16, 2015, submit status report(s) accordingly.

So ordered.

/s/ James G. Carr

Sr. U.S. District Judge