IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crown Battery Manufacturing Co.,                    Case No. 12cv02158

    Plaintiff/ Counter-Defendant

    v.                                                                   **ORDER**

Club Car, Inc.,

    Defendant/ Counter-Plaintiff

    This is a multimillion dollar contract dispute between plaintiff Crown Battery Manufacturing Co. (Crown) and defendant Club Car, Inc. (Club Car). In 2009, Club Car, a manufacturer of golf carts and other small-wheel electric vehicles, contracted with Crown for a supply of batteries for its vehicles.

    Club Car previously moved to dismiss Crown's misrepresentation and fraud-related claims. (Doc. 92). I granted the motion, and dismissed Crown's claims for fraudulent inducement, fraud, misrepresentation, violation of Ohio's Deceptive Trade Practices Act (ODTPA), promissory estoppel, and civil conspiracy (Doc. 92). *Crown Battery Mfg. Co. v. Club Car Inc.*, 2015 WL 1738104, *1 (N.D.Ohio) ("*Crown III*").

    Now pending is Crown's Rule 54(b) motion to reconsider that ruling (Doc. 94). For the following reasons, I deny the motion in part and grant the motion in part.

## Background

Because I have already summarized the factual background of this case in prior orders, I recite it briefly here.

Crown is an Ohio corporation, with its principal place of business in Fremont, Ohio, that specializes in manufacturing batteries. In 2009, Club Car, a Delaware corporation with its principal place of business in Georgia, approached Crown to negotiate a contract for a supply of batteries for its golf carts and utility vehicles. The parties entered into a Strategic Supply Agreement (SSA), in which Crown would supply Club Car batteries according to the specifications that Crown provided. The SSA contained a warranty provision guaranteeing that the batteries would conform to the provided specifications.

Prior to negotiating the SSA, Crown states that Club Car knew that its on board computer system (OBC), the system responsible for battery charging in the vehicles, consistently undercharged the batteries. Club Car used the OBC in each of its golf carts, and the improper charging would cause Club Car's golf carts to unexpectedly fail mid-course. Due to the malfunctioning OBC, Club Car repeatedly attempted to update the OBC software; each update, however, was so minor that it failed to fix the charging problems.

In addition, before receiving batteries from Crown, Club Car had a battery supply contract with U.S. Battery. Despite a steady flow of batteries from U.S. Battery, Club Car's OBC system was still improperly charging batteries in Club Car's golf carts. Club Car tendered thousands of warranty claims to U.S. Battery, claiming that U.S. Battery's batteries were the cause of the failures. Club Car and U.S. Battery then began protracted litigation, and, with Club Car's battery supply threatened, Club Car approached Crown to become its golf cart battery supplier. Club Car and Crown entered into the SSA without Club Car ever informing Crown of

its history of OBC malfunctions or its problems with undercharging of batteries from U.S. Battery.

After Crown began supplying Club Car with batteries, Club Car notified Crown in early 2011 that the Crown batteries were not holding their charges, causing golfers to become stranded in the midst of their rounds. Club Car, pursuant to the warranty in the SSA, tendered thousands of claims, totaling, according to Club Carr, about $20 million, to Crown for defective batteries.

Crown claims that its batteries met the specifications Club Car provided, and that the charging malfunction resulted from Club Car's OBC. Crown alleges that Club Car, prior to entering into the SSA, knew the OBC did not properly charge batteries and that, regardless of whether Crown met the specifications, the batteries were bound to incur chronic undercharging And, knowing that its OBC would not work with Crown's batteries, just as it had not with those from U.S. Battery, Club Car intended to take advantage of the warranty provisions to obtain a steady flow of new batteries at no cost to it.

## Standard of Review

I have the authority to reconsider granting a motion to dismiss before final judgment is entered. *Christianson v. Colt Indus. Operating Group*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance…"); *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir.2004) (citing F.R.C.P. 54(b) & *Reich v. Hall Holding Co*., 990 F.Supp. 955, 965 (N.D.Ohio 1998)). Parties should not use motions for reconsideration to re-litigate issues that have already been considered. *Haw. Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 3862206, *1 (N.D.Ohio). I will reconsider interlocutory orders only when there is 1) an intervening change in controlling

3

law; 2) new evidence; or 3) a need to correct clear error or prevent manifest injustice. *Rodriguez, supra*, 89 Fed. App'x at 959.

### Discussion

1. Ohio Deceptive Trade Practices Act and Misrepresentation

Crown asserts that I erroneously dismissed its ODTPA and Ohio-based misrepresentation claims because Ohio law, not New York law, governs. Crown contends Ohio law applies because 1) it was fraudulently induced to agree to the choice-of-law provision in the SSA and 2) applying New York law runs afoul of Ohio's conflict of laws rules.

To invalidate a choice-of-law clause in a contract, plaintiffs must plead more than a general claim of fraud in the inducement of a contract. *Stamm v. Barclays Bank of N.Y.*, 960 F.Supp. 724, 729 (S.D.N.Y 1997) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)). "Rather, it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud." *Id.*; *see also Thibodeau v. Pinnacle FX Investment*, 2008 WL 4849957, *6 (E.D.N.Y) ("Courts have routinely held that a plaintiff's allegations related to fraudulent inducement of the contract as a whole are insufficient to invalidate a forum selection clause; instead, a plaintiff must allege fraudulent inducement with respect to the clause itself.").

In support of its contention that Club Car did, in fact, fraudulently induce it to enter into the choice-of-law provision, Crown cites the following passage from its SAC:

> Neither party is a New York resident, nor do the parties conduct the majority of their business in New York. Club car induced Crown to agree to this provision. This inducement is part-and-parcel to the inducement by Club Car of Crown to sign the one-sided Supply Agreement.

(Doc. 94 at 17).

There is nothing in this conclusory statement, apart from a wholesale contention that the entirety of the contract was induced by fraud, which suggests the choice-of-law provision itself

4

was induced by fraud. As such, Crown has not pled any facts demonstrating why I should invalidate the clause.

A choice-of-law provision is, at times, invalid under a state's conflict of laws rules. When a court exercises diversity jurisdiction over state law claims, the conflict of laws rules of the forum state—in this case, Ohio's—dictate whether to enforce a parties' selection of law. Ohio applies the Restatement (Second) of Conflicts of Laws § 187 to decide whether to enforce the choice-of-law provision in a contract. *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co*., 6 Ohio St.3d 436, 438 (1983) (adopting RESTATEMENT (SECOND) CONFLICTS OF LAW § 187(2)). Under the Restatement, courts may set aside parties' choice-of-law provisions when 1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or 2) applying the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in how the particular issue is resolved. CONFLICTS OF LAW § 187(2).

Crown claims Ohio law should apply because the parties have no connection to New York and there is no legitimate reason why they chose New York law to apply. Crown emphasizes that neither party has its principal place of business in New York, neither party conducts the majority of its business in New York, and none of the allegations stem from activities that took place in New York. Crown concludes that, because there is no connection to New York, deciding that New York law applies to the contract is inherently unreasonable.

Crown's conclusion runs contrary to the Restatement. The Restatement highlights that "parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship." CONFLICT OF LAWS § 187 cmt. f. Parties may decide, for instance, to choose a state's law "on the ground that they know it well and that it is

5

sufficiently developed." *Id*. Moreover, "rarely, if ever, will the parties choose a law without good reason for doing so." *Id*. Given the assumption that parties have a reason for implementing their choice-of-law provision, and the plethora of reasons for which they may choose a particular state's law, Crown has not shown that there is no reasonable basis for the parties' decision to have New York law to govern their contract.

Because New York law applies, I dismiss Crown's Ohio-based claims: misrepresentation and violation of the Ohio Deceptive Trade Practices Act.

### 2. Fraudulent Inducement

Crown contends I improperly dismissed its fraud and fraudulent inducement claims because 1) Club Car affirmatively misrepresented material facts, prior to the formation of the contract, that induced Crown to enter into the SSA, and 2) its fraudulent inducement claim does not contradict the SSA's express terms.[1]

For its fraud claim to be successful, Crown must meet F.R.C.P. 9(b)'s heightened pleading standard. When alleging fraud, a party must state "with particularity" the circumstances constituting the fraud, meaning that the complaint must 1) specify the statements that the plaintiff contends were fraudulent, 2) identify the speaker, 3) state where and when the statements were made, and 4) explain why the statements were fraudulent. Fed.R.Civ.P. 9(b); *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare Inc.*, 583 F.3d 935, 942-43 (6th Cir.2009) (quotations marks and citation omitted). The complaint need only allege scienter "generally." Fed.R.Civ.P. 9(b).

---

[1] Because "the elements of fraudulent inducement are substantially the same as those for common law fraud," I employ an identical analysis in assessing both claims. *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297-98 (S.D.N.Y. 2011) (citing *Braddock v. Braddock,* 871 N.Y.S.2d 68, 70 (1st Dep't 2009)).

"'[B]ut 'generally' is a relative term" that, in the context of Rule 9, "is to be compared to the particularity requirement applicable to fraud or mistake.'" *Dana Ltd. v. Aon Consulting, Inc.,* 984 F. Supp. 2d 755, 770 (N.D.Ohio 2013) (citing *Iqbal v. Twombly,* 556 U.S. 662, 686-87 (2009). Rule 9 only excuses a party from having to allege "intent under an elevated pleading standard"; it does not enable a party "to evade the less rigid—thought still operative—strictures of Rule 8." *Iqbal, supra*, 556 U.S. at 686-87.

In New York, fraud claims can, at times, proceed alongside a party's breach of contract claim. *See, e.g., Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994) (citing *Triangle Underwriters, Inc. v. Honeywell, Inc*., 604 F.2d 737 (2d Cir.1979)). This is so where the plaintiff 1) demonstrates a legal duty separate from the duty to perform under the contract; 2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or 3) seeks special damages that are unrecoverable as contract damages. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir.2007) (citing *Bridgestone/ Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 20 (2d Cir.1996)). A plaintiff's fraud claim survives, even though the same circumstances also give rise to the plaintiff's breach of contract claim, when the plaintiff alleges that the defendant made material misstatements of fact prior to entering into the contract with the defendant. *Cohen, supra*, 5 F.3d at 1173 (2d Cir. 1994).

Plaintiffs may not, however, "'dress up' a breach-of-contract claim as a fraud claim." *Triangle Underwriters, supra*, 604 F.2d at 746-47. A breach of contract "is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick v. Long Island R.R. Co*., 70 N.Y.2d 382, 389 (1987). As I stated in *Crown III*, tort claims alleging only economic loss "will not lie"; in such instances, "the usual means of redress is an action for

breach of contract." *Crown III* (citing *Shred-It USA, Inc., v. Mobile Data Shred*, 222 F.Supp.2d 376, 379 (S.D.N.Y 2002)).

To state a claim for fraudulent inducement under New York law, a plaintiff must show 1) a representation of material fact, 2) which was untrue, 3) which was known to be untrue or made with reckless disregard for the truth, 4) which was offered to deceive another or induce him to act, and 5) which that other party relied on to its injury. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2nd Cir.2005).

Crown asserts that its fraud claim is collateral to the contract because Club Car misrepresented to it, prior to entering into the SSA, the problems Club Car was having with its OBC, the issues with its other supplies, and its representation that its vehicles could function with any battery that Crown supplied. These assumptions, if taken as true, would allow Crown to proceed with its fraud claim alongside its breach of contract claim.

Crown's primary problem, however, is meeting the heightened 9(b) pleading standard. Crown has not yet shown, what, specifically, Club Car affirmatively misrepresented. Crown's complaint recites that "Club Car represented to Crown that batteries which met these Specifications would work with the OBC and the Club Car Vehicles." (Doc. 80 ¶ 155). Crown's conclusion seems to be based on the charging profile that Club Car supplied to Crown. According to Crown, the profile demonstrated that Club Car's vehicles could function with any battery that Crown supplied. Crown has not shown, however, how Club Car knew that this specific battery profile it was proffering was fraudulent. Crown has not identified who developed the profile, who sent the profile, and any attendant conversations or other communications that occurred during this transfer of information. Were there other oral or written statements, for

instance, in which Club Car assured Crown that no matter what batteries it supplied, they would function with the OBC?

Crown also seemingly alleges that Club Car can be held liable under a theory of "fraudulent concealment." To establish a claim for fraudulent concealment in New York, plaintiffs must show 1) a relationship between the contracting parties that creates a duty to disclose, 2) knowledge of the material facts by the party bound to disclose, 3) scienter, 4) reliance, and 5) damages. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (citing *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 472 (S.D.N.Y. 1992)). A duty to disclose arises in only three circumstances: "where the parties are in a fiduciary relationship; under the 'special facts doctrine,' where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." *Aetna Cas., supra*, 404 F.3d at 582 (internal quotations & citations omitted).

Crucial to establishing its fraudulent inducement claim, and overcoming the strictures of Rule 9(b), is showing that Club Car had a duty to disclose certain information to Crown. Crown, rather than addressing its fraudulent concealment pleadings directly in its complaint, has simply alleged this theory in a brief footnote in its Motion to Reconsider. (Doc. 94, p. 5, f. 4). In its complaint, Club Car does state facts suggesting that Club Car knew, but never informed Crown, that it had persistent issues with the OBC, and that it was engaged in protracted litigation with its former battery supplier. But for me to properly consider this issue, Crown needs to set forth its arguments in full and provide Club Car with an opportunity to respond.[2]

---

[2] I agree with Crown, for the purposes of this Order, that the SSA does not stand as a total bar to its claims. If Crown's allegations of Club Car's misrepresentation of material facts prior to entering into the SSA proceed, then Crown has plead issues of fraud that go beyond whether or not it met the specifications set forth in the SSA.

9

Given the allegations, and the stage in the proceedings, I will allow Crown and Club Car to submit further briefing on this matter. Specifically, Crown should demonstrate in accordance with Rule 9(b) and with requisite particularity the basis for its contention that Club Car affirmatively misrepresented information to it. Crown, moreover, needs to provide a detailed explanation for its fraudulent concealment charge.

### 3. Promissory Estoppel and Civil Conspiracy

Because whether Crown's promissory estoppel and civil conspiracy claims can proceed depends, in part, on the outcome of its fraud and fraudulent inducement claims, I will wait to rule on both claims. N.Y. C.P.L.R. § 3014 (Plaintiffs may plead causes of action "alternatively or hypothetically."); *Karmiloqicz v. The Hartford Fin. Servs. Group, Inc*., Fed. App'x 153, 157 (2nd Cir. 2012) (quoting *City of Yonkers v. Otis Elevator Co*., 844 F.2d 42 (2nd Cir. 1988)) ("'[Q]uasi-contractual… relief is unavailable where an express contract covers the subject matter.'"); *Shred-It USA, supra,* 222 F.Supp.at 379 (S.D.N.Y. 2002) (quoting *Clark-Fitzpatrick, supra,* 70 N.Y.2d at 388-89 ("[I]t is a 'well established principle that a… breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'").

### Conclusion

It is therefore

    ORDERED THAT:

1. Crown's motion for reconsideration (Doc. 94) be, and the same hereby is denied in part with regard to the applicability of New York law, and granted in part to the extent the I shall consider further briefing on the issues specified herein; and

10

2. On or before July 20, 2015, the parties shall submit supplemental briefs re. the adequacy of Crown's pleading of its fraud and fraudulent inducement claims; leave granted to the parties thereafter to submit response briefs on or before July 31, 2015.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

11