IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crown Battery Manufacturing Co.,                    Case No. 3:12cv2158

    Plaintiff/Counter-Defendant,


    v.                                          **ORDER**


Club Car, Inc.,

    Defendant/Counter-Plaintiff.

This is a multimillion-dollar contract dispute between plaintiff Crown Battery Manufacturing Co. (Crown) and defendant Club Car, Inc. (Club Car). In 2009, Club Car, a manufacturer of golf carts and other small-wheeled electric vehicles, contracted with Crown for a supply of batteries.

Club Car previously moved to dismiss Crown's misrepresentation and fraud-related claims. (Doc. 92). I granted the motion, and dismissed Crown's claims for fraudulent inducement, fraud, misrepresentation, violation of Ohio's Deceptive Trade Practices Act, promissory estoppel and civil conspiracy. *Crown Battery Mfg. Co. v. Club Car Inc.*, 2015 WL 1738104, *1 (N.D. Ohio) (*Crown II*).

Crown then moved for reconsideration and reinstatement of its fraud-based claims. (Doc. 94). Crown argued: 1) Ohio law governs its fraud-based claims; 2) its fraudulent inducement claim may proceed alongside its breach of contract claim; 3) its fraudulent inducement claim

1

does not contradict the parties' contract; and 4) the "economic loss" doctrine does not preclude intentional tort claims. (*Id.*).

I denied the motion in part, finding New York law governs Crown's claims. *Crown Battery Mfg. Co. v. Club Car Inc.*, 2015 WL 4041966, *2-3 (N.D. Ohio) (*Crown III*). With respect to Crown's other arguments, I directed the parties to submit supplemental briefing regarding: 1) whether Crown pled fraud with particularity sufficient to satisfy Fed. R. Civ. P. 9(b), and 2) the details underlying Crown's fraudulent concealment theory. *Id.* at *6. The parties have submitted their respective supplemental briefs. (Docs. 100, 102-1, 103, 104).

For the following reasons, I now deny Crown's motion in its entirety.

## Background

Because I already have extensively, indeed, exhaustively summarized the factual background of this case in prior orders, I recite it only briefly here. *See, e.g.*, *Crown Battery Mfg. Co. v. Club Car Inc.*, 2013 WL 5670950, *1-3 (N.D. Ohio).

Before contracting with Crown, Club Car purchased batteries for its vehicles from other suppliers, including U.S. Battery.

Over time, U.S. Battery came to believe Club Car's on-board computer system (OBC), which monitored current flows and regulated battery charge, undercharged batteries, causing Club Car's vehicles unexpectedly to die. Club Car claimed the batteries, not the OBC, were to blame, and tendered thousands of warranty claims to U.S. Battery. Club Car and U.S. Battery entered protracted litigation, which threatened Club Car's battery supply. Club Car thus looked to Crown to supply it batteries.

2

In July 2009, as part of contract negotiations, a Club Car engineer emailed a Crown engineer "[d]raft" battery specifications. (Doc. 102-11). They stated the OBC "monitors all battery current" draws, and uses that information to regulate battery charge. (*Id.* at 5).

In late 2009, Club Car and Crown entered into a "Strategic Supply Agreement" (SSA), which provided Crown would supply batteries according to Club Car's specifications. (Doc. 96-2). The SSA contained warranty provisions guaranteeing the batteries would conform to those specifications.

Club Car never informed Crown of its dispute with U.S. Battery, or that its OBC might be flawed, as Crown contends in this litigation.

In early 2011, about a year after the SSA began, Club Car notified Crown the batteries were not holding charges. Citing the SSA's warranty provisions, Club Car tendered thousands of claims to Crown for defective batteries. These claims totaled around $20 million. Club Car also refused to pay Crown more than $2.5 million for batteries it had purchased.

Crown asserts its batteries met Club Car's specifications. It contends Club Car's emailed "[d]raft" representation that the OBC "monitors all battery current" draws was fraudulent because Club Car knew the OBC, as designed, did not account for draws on the battery within a ± 2 ampere range (known as the "Deadband"). Crown alleges that discrepancy, among other OBC problems, caused its batteries to fail.

Crown also contends Club Car fraudulently concealed that the OBC had caused the same problem with batteries from its previous suppliers.

Crown alleges if it had known the truth about the OBC, it never would have agreed to be Club Car's supplier.

3

**Standard of Review**

I have authority to reconsider granting a motion to dismiss before entering final judgment. *See Christianson v. Colt Indus. Operating Group*, 486 U.S. 800, 817 (1988) (noting courts should be "loathe" to revisit prior decisions absent "extraordinary circumstances") (citing *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

Parties should not use motions for reconsideration to re-litigate issues I already have considered. *Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 3862206, *1 (N.D. Ohio). I will reconsider interlocutory orders only when there is: "1) a clear error of law; 2) newly discovered evidence; 3) an intervening change in controlling law; or 4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

**Discussion**

I earlier ruled that in New York, under the "economic loss" doctrine, a litigant could not both seek to enforce its rights under a contract (as Crown does here) and concurrently assert fraud claims (which challenge the validity of the contract). *Crown II, supra*, at *3. On further consideration in conjunction with the instant motion, it appears that New York law with regard to the "economic loss" doctrine, as it applies to fraud claims, is not so clear cut.[1] I need not revisit this issue, much less try to untangle it, as I base my decision on failings in the complaint itself.

Those cases that do not apply the "economic loss" doctrine to bar concurrent assertion of breach of contract and fraud, *see, e.g.*, *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994),

---

[1]  *Compare, e.g.*, *Genna v. Sallie Mae, Inc.*, 2012 WL 1339482, *4 (S.D.N.Y.), *and Computech Int'l, Inc. v. Compaq Comput. Corp.*, 2004 WL 1126320, *10 (S.D.N.Y.), *with Shred-It USA, Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002), *and Orlando v. Novurania of America, Inc.*, 162 F. Supp. 2d 220, 225-26 (S.D.N.Y. 2001). The Second Circuit has yet squarely to address the issue. *See Sofi Classics S.A. de C.V. v. Hurowitz*, 444 F. Supp. 231, 246-47 (S.D.N.Y. 2006) (describing disagreement over the issue).

require plaintiff to: 1) demonstrate a legal duty separate from the duty to perform under the contract; 2) point to a fraudulent misrepresentation collateral or extraneous to the contract; or 3) seek special damages unrecoverable as contract damages. *See Merrill Lynch & Co. Inc. v. Allegheny Energy Inc.*, 500 F.3d 171, 183 (2d Cir. 2007).

Plaintiffs may not, however, "dress up a contract claim in a fraud suit of clothes." *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 746-47 (2d Cir. 1979) (discussing *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259 (1937)). A breach of contract "is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987).

### A. Crown's Fraudulent Inducement Theory

Crown contends Club Car fraudulently induced it to enter into the SSA.

A claim for fraudulent inducement requires proof of: "1) a material misrepresentation or omission that induced the party to sign the contract; 2) scienter; 3) reliance; and 4) injury." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (internal quotation marks omitted); *see Centro Empresarial v. América Móvil, S.A.B.*, 17 N.Y.3d 269, 276 (N.Y. 2011); *Schmaker v. Mather*, 133 N.Y. 590, 595 (N.Y. 1892).

Under the uniquely stringent pleading requirements of Rule 9(b), Crown must plead the elements of fraud with particularity, with the exception of scienter, which it may aver generally. In the Sixth Circuit, Rule 9(b) requires "a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the

fraudulent intent of the defendants; and the injury resulting from the fraud."[2] *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citation omitted).

The purpose of Rule 9(b) is to provide "fair notice to the defendant so as to allow [it] to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Parents and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).

Crown points to just one alleged material misrepresentation. About two months before the SSA began, a Club Car engineer stated in "[d]raft" specifications emailed to a Crown engineer that "[t]he OBC (on board computer) includes a hall effect current sensor that monitors *all* battery current [draws and uses that information to regulate battery charging]."[3] (Doc. 102-11 at 5) (emphasis added). Crown alleges, in conclusory fashion, that this representation was a "material fact" in Crown "making its decision to source batteries to Club Car." (Doc. 70-1 ¶¶ 82, 91).

Crown's allegation does not satisfy Rule 9(b). Even assuming the Club Car engineer intended to defraud Crown, Crown does not allege with particularity that some specific someone at Crown "actually, directly" relied on the alleged misrepresentation. *Turtur v. Rothschild Registry Int'l, Inc.*, 1993 WL 338205, *6 (S.D.N.Y.); *see Golden Budha Corp. v. Canadian Land Co. of Am.*, 931 F.2d 196, 202 (2d Cir. 1991) (proof of "actual reliance" required). Indeed, it is not clear anyone at Crown playing a role in the formation of the contract ever read, was aware of,

---

[2] Although, as I previously held, New York substantive law governs Crown's claims, *see Crown III*, *supra*, at *3, Ohio procedural law governs pleading requirements. *See Elec. Power Board of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989) (procedural law of forum state applies).

[3] As I previously held, this alleged misrepresentation seems to contradict express language in the SSA. *See Crown II*, *supra*, at *3. Crown therefore could not reasonably have relied on it. *See State Univ. Constr. Fund v. Aetna Cas. & Sur. Co.*, 592 N.Y.S.2d 490, 492-93 (N.Y. App. Div. 1993) (party cannot rely on representation that contradicts express contract term).

took note of, or had in mind the sentence at issue, embedded as it was in a data-laden technical document.

Crown would need to allege the individual who contracted with Club Car on Crown's behalf specifically knew of the representation and actually relied on it while participating in the decision-making process. *See Turtur*, *supra*, 1993 WL 338205, *6; *see also Golden Budha Corp.*, 931 F.2d at 202. Crown does not come close to doing that here. *See Mills v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 130548, *4 (S.D. Ohio) (conclusory allegations of reliance insufficient); *Thomas v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 1854297, *8 (S.D. Ohio) (plaintiff must offer factual allegations explaining how it relied on alleged misrepresentation).

Crown's fraudulent inducement theory is therefore fatally flawed under Rule 9(b).

### B.  Crown's Fraudulent Concealment Theory

Crown also contends Club Car fraudulently concealed facts that, if disclosed, would have led Crown not to enter into the SSA. Specifically, Crown alleges Club Car knew the OBC did not work and Crown's batteries would fail regardless of whether they met specifications.

In New York, a plaintiff alleging fraudulent concealment must show: 1) "concealment of a material fact which defendant was duty-bound to disclose;" 2) "scienter;" 3) "justifiable reliance;" and 4) "injury." *Mitschele v. Schultz*, 36 A.D. 3d 249, 254-55 (N.Y. App. Div. 2006).

To satisfy Rule 9(b), Crown must specify the "who, what, when, where and how" of the alleged omission. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012) (internal quotation marks omitted). Specifically, it must set forth: "1) precisely what was omitted; 2) who should have made the representation; 3) the content of the alleged omission and the manner in which the alleged omission was misleading; and 4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* at 256 (internal quotation marks omitted).

Again, Crown fails adequately to plead the elements of its claim. Crown does not allege with particularity who at Club Car should have disclosed the concealed information, or the context of the failure to disclose. *See id.* at 255-56. Crown's vague assertion that Club Car, as a whole, concealed material information during contract negotiations does not meet Rule 9(b)'s demanding pleading standards. *See id.*

Crown's fraudulent concealment theory is therefore also unavailing.

## Conclusion

This case is, at its core, a contract dispute. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 91-92 (2d Cir. 2005) (where allegations of fraud relate to breach of a contract, merely adding allegations of scienter does not give rise to a viable fraud claim); *Fisher v. Big Squeeze (N.Y.), Inc.*, 349 F. Supp. 2d 483, 489 (E.D.N.Y. 2004) (dismissing fraudulent concealment claim that was duplicative of breach of contract claim). Both Crown's claim and Club Car's counterclaim depend on the SSA's warranty provisions. If Crown proves its batteries met the specifications Club Car provided, Crown will prevail. If Club Car proves otherwise, it will prevail.

Accordingly, I expect this case will go to a jury to determine whether Crown's batteries met specifications.

It is, therefore

ORDERED THAT Crown's motion to reconsider my dismissal of its fraud-based claims (Doc. 94) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge